UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

SUSIE ONG, Individually and on Behalf of All :    Civil Action No. 1:16-cv-00141-KPF
Others Similarly Situated,                   :

                         :    <u>CLASS ACTION</u>

               Plaintiff,     :

                         :    PLAINTIFFS' REPLY MEMORANDUM OF
      vs.                    :    LAW IN FURTHER SUPPORT OF MOTION
                         :    FOR RELIEF FROM JUDGMENT AND
CHIPOTLE MEXICAN GRILL, INC., M.    :    FOR LEAVE TO AMEND
STEVEN ELLS, MONTGOMERY F.       :
MORAN and JOHN R. HARTUNG,      :

                         :
              Defendants.    :
                         :

———————————————————————— x

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................2

    A.    Plaintiffs Raise Numerous Legitimate Grounds for Rule 59(e) Relief...................2

    B.    Plaintiffs Have Satisfied the Rule 15 Requirements for Amendment ....................3

        1.    The PTAC States a Claim for the Commissary Switch Omissions ............3

        2.    The PTAC States a Claim for the Quality Assurance Omissions...............5

        3.    The PTAC States a Claim for the Ingredient Traceability
            Omissions.................................................................................................7

        4.    The PTAC States a Claim for the November 2015
            Misrepresentations and Omissions ...........................................................8

        5.    The PTAC States a Claim for the Items 303 and 503 Omissions...............9

        6.    The PTAC Adequately Alleges that the Individual Defendants'
            Stock Sales Support Scienter ..................................................................10

        7.    The PTAC Adequately Alleges Loss Causation .......................................10

III.  CONCLUSION....................................................................................................10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014)..................................................................................10

*Christine Asia Co. v. Ma*,
2017 U.S. App. LEXIS 24647
(2d Cir. Dec. 5, 2017) ...........................................................................................5

*City of Pontiac Gen. Emples. Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012)...................................................................5

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..............................................................................................10

*Fogel v. Wal-Mart de Mexico SAB de CV*,
2018 U.S. Dist. LEXIS 27762
(S.D.N.Y. Feb. 21, 2018) ......................................................................................3

*Gubricky v. Ells*,
255 F. Supp. 3d 1119 (D. Colo. 2017)...........................................................2, 5, 6

*In re Bear Stearns Cos.*,
2011 U.S. Dist. LEXIS 103061
(S.D.N.Y. Sept. 13, 2011) .....................................................................................2

*In re BHP Billiton Ltd. Sec. Litig.*,
276 F. Supp. 3d 65 (S.D.N.Y. 2017)......................................................................6

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001)....................................................................................7

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016)..................................................................................1

*Ind. Pub. Ret. Syst. v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016)....................................................................................9

*Lapin v. Goldman Sachs Grp., Inc.*,
506 F. Supp. 2d 221 (S.D.N.Y. 2006)....................................................................6

*Lashkari v. Ells, et al.*,
No. 1:16-cv-03180 (D. Colo.) ..........................................................................2, 5, 6

**Page**

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
    797 F.3d 160 (2d Cir. 2015).................................................................................................2, 7

*Pasternack v. Shrader,*
    863 F.3d 162 (2d Cir. 2017)....................................................................................................2

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 15 ...............................................................................................................................1, 3
    Rule 15(a)................................................................................................................................3
    Rule 59(e)..................................................................................................................1, 2, 3, 8
    Rule 60(b) ...............................................................................................................................3

## GLOSSARY OF DEFINED TERMS

| ¶__ or ¶¶___: | Paragraphs in the PTAC |
|---|---|
| **11/3/15 Press Release:** | A press release issued by Chipotle on November 3, 2015 regarding the First Multistate Winter E. Coli Outbreak |
| **11/10/15 Press Release:** | A press release issued by Chipotle on November 10, 2015 regarding the First Multistate Winter E. Coli Outbreak |
| **3Q15 Form 10-Q:** | The Form 10-Q filed by Chipotle with the SEC on October 21, 2015, for the third fiscal quarter of 2015, the period ended September 30, 2015 |
| **August 2015 Report:** | A report prepared by the SSR department in August 2015 that was provided to defendants Ells and Moran, Spong, and the Audit Committee of the Board, on August 31, 2015 |
| **Batti:** | Leonard Batti, President of Taylor Farms Florida, a division of Taylor Fresh Foods Inc. |
| **Board:** | The Chipotle Board of Directors |
| **CDC:** | The United States Center for Disease Control and Prevention |
| **CEO:** | Chief Executive Officer |
| **CFO:** | Chief Financial Officer |
| **Chipotle/ the Company:** | Chipotle Mexican Grill, Inc. |
| **Class Period:** | The period February 5, 2015 through February 2, 2016 |
| **Defendants:** | Chipotle and the Individual Defendants |
| **Def. Opp.:** | Defendants' Opposition to Plaintiffs' Motion for Relief from Judgment and for Leave to Amend, dated May 18, 2018 (ECF No. 112) |
| **Dr. Wise:** | Dr. Matthew Wise, the CDC's Outbreak Response Team Lead for the First Multistate Winter E. Coli Outbreak |
| **E. coli:** | Escherichia coli is a virus, typically contracted through consumption of contaminated and raw food or water, and is highly virulent |
| **Ells:** | Defendant M. Steven Ells, founder of Chipotle and co-CEO and Chairman of the Chipotle Board during the Class Period, who resigned as CEO in November 2017 |
| **Ex.:** | The exhibit to the Reply Declaration of David A. Rosenfeld, dated June 1, 2018, submitted herewith |

| | |
|---|---|
| **Ex. 1:** | Excerpts from the Verified Shareholder Derivative Complaint filed in *Lashkari v. Ells, et al.*, No. 1:16-cv-03180-WJM-KLM (D. Colo.), dated Apr. 2, 2018 (ECF No. 36) |
| **FE:** | The former Chipotle employees referenced in the PTAC |
| **FE3:** | Former Employee 3, who worked as a Restauranteur and Area Manager at Chipotle from January 2012 to August 2016 |
| **FE4:** | Former Employee 4, who worked as an Area Manager at Chipotle from May 2015 to January 2016 |
| **FE5:** | Former Employee 5, who worked as an Area Manager at Chipotle from December 2014 to August 2016 |
| **FE6:** | Former Employee 6, who worked as a Team Director at Chipotle from 2015 to March 2017 |
| **First Multistate Winter E. Coli Outbreak:** | The First Multistate Winter E. Coli Outbreak, which sickened 55 individuals across 11 states and lasted from October 30, 2015 to February 1, 2016, and was linked to Chipotle |
| ***Gubricky* Action or *Gubricky*:** | A shareholder derivative litigation captioned *Gubricky v. Ells, et al.*, No. 1:16-cv-02011 (D. Colo.), filed on August 8, 2016 |
| **Hartung:** | Defendant John R. Hartung, Chipotle's CFO |
| **Individual Defendants:** | Defendants Ells, Moran and Hartung |
| **Judgment:** | The judgment ordered by the clerk on March 23, 2018, dismissing this case (ECF No. 105) |
| ***Lashkari* Action or *Lashkari*:** | A shareholder derivative litigation captioned *Lashkari v. Ells, et al.*, No. 1:16-cv-03180 (D. Colo.), filed on December 27, 2016 |
| **Late 2014 E. Coli Outbreak:** | An outbreak of E. coli that sickened 8 individuals across several states and lasted from October 2014 to December 2014, and was linked to Chipotle |
| **Moran:** | Defendant Montgomery F. Moran, co-CEO of Chipotle during the Class Period who resigned on December 12, 2016 |
| **Norovirus:** | Norovirus, also known as the "Norwalk virus," is a member of the virus family Caliciviridae, which infects humans through person-to-person transmission or through contamination of food or water and is highly virulent |

| Order: | The Opinion and Order issued by the Court on March 22, 2018 dismissing the SAC (ECF No. 104) |
|---|---|
| Plaintiffs: | Lead Plaintiffs Metzler Asset Management GmbH and Construction Laborers Pension Trust of Greater St. Louis |
| Pl. Mem.: | Plaintiffs' Memorandum of Law in Support of Motion for Relief from Judgment and for Leave to Amend, dated April 20, 2018 (ECF No. 107) |
| PSLRA: | The Private Securities Litigation Reform Act of 1995 |
| PTAC: | The [Proposed] Third Amended Complaint for Violations of the Federal Securities Laws, dated April 20, 2018 (ECF No. 108-1) |
| Rule: | Federal Rule of Civil Procedure |
| SAC: | The Second Amended Complaint for Violations of the Federal Securities Laws, dated April 7, 2017 (ECF No. 80) |
| Salmonella: | Salmonella refers to a group or family of bacteria that variously cause illness in humans and is usually transmitted by humans eating food contaminated with animal feces or foods that have been handled by infected food service workers who have practiced poor personal hygiene |
| SEC: | The United States Securities and Exchange Commission |
| Section 220 Documents: | Documents produced by Chipotle to the plaintiffs in the *Gubricky* Action and the *Lashkari* Action pursuant to requests made under 8 Del. C. §220, which affords stockholders a right to review the corporation's books and records |
| Spong: | Tim Spong, Chipotle's Executive Director of SSR |
| SSR: | Chipotle's Safety, Security and Risk department, which was overseen by defendant Hartung and whose Executive Director was Spong and whose Investigations Manager was Mann |
| Stone: | Roslyn Stone, Chief Operating Officer of Corporate Wellness, Inc., a consultant retained by Chipotle during the Class Period |
| Wederquist: | Heidi Wederquist, Chipotle's Director of Quality Assurance & Food Safety until March 2016 |

## I.   INTRODUCTION

> "Where a company seeks fraudulently to hide a particularly large problem with multiple contributing factors, it is quite probable that the company will have to lie about a number of related topics in order successfully to conceal the larger issue." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 250 (2d Cir. 2016) (upholding private securities fraud jury verdict).

As alleged in the PTAC, Defendants fraudulently hid from investors an unprecedented epidemic of food-borne illness outbreaks at Chipotle restaurants beginning in late 2014.   To accomplish this, Defendants lied about several related topics, including: (i) the commissary switch significantly increasing Chipotle's risk of experiencing such outbreaks (¶¶296-317); (ii) numerous material deficiencies with Chipotle's food safety practices (¶¶329-74); (iii) Chipotle's inability to identify or remove contaminated food from its farm-to-restaurant supply chain (¶¶390-426); (iv) the existence of the pre-October 2015 outbreaks (¶¶111-218, 452-54); and (v) the status of investigations into the First Multistate Winter E. Coli Outbreak.   ¶¶462-99. Defendants misled investors about these topics to prevent them from learning the "larger issue" – that Chipotle valued profits at the expense of food safety.   ¶2.   This scheme allowed the Individual Defendants to reap millions selling their Chipotle stock.   ¶¶506-21.

Defendants cannot avoid the fact that the PTAC pleads numerous factual matters that were either unavailable or not considered by the Court when the SAC was dismissed.   Pl. Mem. 4-6.   These allegations, in conjunction with the SAC's allegations, state claims for all the "related topics" that concealed the pervasive food safety fraud at Chipotle during the Class Period.   *Id.* 7-21.   For the reasons set forth in Plaintiffs' opening brief, and below, Rule 59(e) and Rule 15 relief is warranted.   Like *Vivendi*, this case deserves to proceed to discovery and beyond.

## II.    ARGUMENT

### A.    Plaintiffs Raise Numerous Legitimate Grounds for Rule 59(e) Relief

Defendants concede that new evidence, overlooked facts or controlling decisions, and the need to correct clear errors or prevent manifest injustice are valid grounds for Rule 59(e) relief. Def. Opp. 2.  Recognizing that the PTAC raises such points, Defendants complain that many of the new allegations, which they concede were unavailable until after the SAC was filed, should be disregarded because they are not "new" following entry of the Judgment.  *Id.* 2-6.

This argument fails for two reasons.  First, Plaintiffs' counsel's investigation continued until April 2018 (Pl. Mem. 4), and it was not practical for Plaintiffs to file a new amended complaint each time they received new information after April 2017.  C*f.* Order 72-73.  Plaintiffs specifically advised the Court on November 8, 2017 that, although some information had been obtained since April, amendment would be sought, if necessary or appropriate, once they received additional evidence from the CDC and several state health departments, as well as the unsealed pleadings from *Gubricky* and *Lashkari*.  *See* ECF No. 99.  It was not until all the information was obtained by April 2018 that the clearest picture of Defendants' fraud emerged. *See Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (finding abuse of discretion where district court denied leave to amend "based solely on delay" where there was no showing it was in bad faith); *In re Bear Stearns Cos.*, 2011 U.S. Dist. LEXIS 103061, at *9-10 (S.D.N.Y. Sept. 13, 2011) (granting Rule 59(e) relief over objections that the new information was derived from previously public sources).  It would be unjust to prevent Plaintiffs from relying on such information simply because they reserved the decision to seek leave to file a third amended complaint until this investigation was complete.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015) (finding that district court "denied Plaintiffs the opportunity to demonstrate that their claims deserve to be decided on the merits").

Second, Rule 59(e) relief is warranted because, in denying leave to amend the SAC, the Court did not address the facts learned since the SAC was filed – allegations Plaintiffs raised in letters with the Court before Judgment was entered.  *See* ECF Nos. 96, 100.  Because these allegations appear to have been overlooked (Order 71-73), they are properly considered.

Defendants also portray this motion as an attempt to relitigate the SAC's dismissal.  Def. Opp. 3.  In reality, Plaintiffs' motion explains how the new allegations in the PTAC, considered with the SAC's allegations, state actionable claims.  Pl. Mem. 6-21.  The Order is discussed only to the extent that controlling law was overlooked – an appropriate ground for Rule 59(e) relief – or to illustrate how the PTAC satisfies Rule 15(a).  Thus, unlike the plaintiffs in *Fogel v. Wal-Mart de Mexico SAB de CV*, 2018 U.S. Dist. LEXIS 27762 (S.D.N.Y. Feb. 21, 2018), who failed to raise any legitimate grounds for relief under Rule 59(e) (*id.* at *9-21), Plaintiffs have set forth not just one, but several, appropriate grounds for Rule 59(e) relief.

**B.    Plaintiffs Have Satisfied the Rule 15 Requirements for Amendment**

While Rules 59(e) and 60(b) govern whether the Court will grant relief from the Judgment, Rule 15 governs whether the requested amendment should be permitted.  Because (i) Plaintiffs did not engage in undue delay; (ii) Defendants will not be unduly prejudiced; and (iii) amendment is not futile, leave to file the PTAC should be granted.

**1.    The PTAC States a Claim for the Commissary Switch Omissions**

Among other things,  the PTAC alleges that: (i) the CDC was actively communicating with numerous Chipotle executives, and its agent and lawyers, about the Late 2014 E. Coli Outbreak by December 2014; (ii) the CDC linked this outbreak to Chipotle; (iii) Chipotle's impaired ingredient traceability program prevented finding a cause of this outbreak; and (iv) the CDC raised concerns with gaps in Chipotle's food-safety system in connection with this

outbreak.  ¶¶111-30.  Rather than address these allegations, Defendants claim this outbreak is irrelevant because the commissary switch took place in November 2014.  Def. Opp. 6.

The PTAC alleges no such thing.  Defendants' sole support for the switch occurring in November 2014 is the statement of one of Chipotle's suppliers, whose knowledge of Chipotle's operations Defendants have previously criticized.  *See* ECF No. 74 at 17 (claiming Batti "makes no particularized statements about Chipotle's food safety programs").  Batti does not definitively state when the commissary switch took place; instead he provides a general timeframe.  ¶297.  The plausible inference is that the commissary switch took place by October 2014 – *i.e.*, late 2014 (¶296) – and that the sicknesses associated with the Late 2014 E. Coli Outbreak shortly followed.  Indeed, Chipotle had no outbreaks between 2009 and this outbreak (¶315), and then suddenly the Company experienced an unprecedented surge of outbreaks from October 2014 to November 2015.  ¶110.  Likewise, Dr. Wise at the CDC indicated that a change in Chipotle's operations in the first half of 2014 could explain these outbreaks (¶¶310-11), which Defendants implausibly cite as proof that the switch occurred in November 2014.  Def. Opp. 6-7.  Dr. Wise clearly implicated a time period ***before*** October 2014 (and not necessarily only the first half of 2014), meaning the surge in outbreaks is consistent with Plaintiffs' allegations concerning the commissary switch.

Defendants also claim that the PTAC's allegations regarding the Company's reporting procedures for food-borne illness outbreaks are rehashed.  Def. Opp. 7-8.  But FE6 – who did not speak to Plaintiffs' counsel until after the SAC was filed and is therefore "new" – confirmed that health department visits "always generated" paperwork that was then provided to SSR.  ¶64.  Defendants counter that FE6 cannot speak to Chipotle's safety reporting throughout its operations (Def. Opp. 8), but do nothing to substantiate that claim, and ignore that FE3, FE4 and

FE5 corroborate FE6.   ¶¶61-64; *see also City of Pontiac Gen. Emples. Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 371 (S.D.N.Y. 2012) (sustaining complaint where "[t]he allegations [we]re corroborated by multiple confidential witnesses.").   In any event, the new allegations concerning the CDC's tracking efforts put the matter to rest because they establish that the CDC was apprised of these outbreaks in real time (¶¶46-48), either because Chipotle told the CDC (confirming Defendants' knowledge), or through the internal Chipotle reporting procedures described by the FEs.   ¶¶130, 133, 139, 147, 154, 162, 168, 170, 179, 195, 217.

With respect to the new allegations concerning Chipotle's large temporal gap in food-borne illness outbreaks from 2009 to late 2014, Defendants insinuate that Chipotle had experienced other food-borne illness outbreaks during this time (Def. Opp. 8-9), but offer no explanation for why the CDC had no evidence of such outbreaks (¶¶107-09), or why Stone admitted that Chipotle had no E. Coli outbreaks in 2013 or early 2014 (¶¶114-15).  The reality is no Chipotle-linked outbreaks occurred during this time, as confirmed by the CDC.   ¶¶46-48. Defendants also continue to mischaracterize the pre-October 2015 outbreaks alleged in the PTAC as being "never tied to Chipotle" (Def. Opp. 8-9), ignoring that the CDC was tracking these outbreaks specifically *because* of their connection to Chipotle.   ¶¶46, 107.

These new allegations alone are sufficient to state a claim for the commissary switch omissions.  Pl. Mem. 7-9.  This is particularly so because reasonable inferences must be drawn in Plaintiffs' favor on a motion to dismiss, as underscored in *Christine Asia Co. v. Ma*, 2017 U.S. App. LEXIS 24647 (2d Cir. Dec. 5, 2017) (*see* Pl. Mem. 9-10), about which Defendants address, but offer no compelling response.  Def. Opp. 9-10.

### 2.     The PTAC States a Claim for the Quality Assurance Omissions

Defendants disingenuously portray the partial unsealing of the *Gubricky* and *Lashkari* complaints as revealing only previously public information.  Def. Opp. 10-11.  This is inaccurate

for two reasons.  First, Defendants ignore that the most salient aspect of the August 2015 Report – that defendants Ells and Moran, along with Spong (who directly reported to defendant Hartung (¶66)), were present at the Chipotle Audit Committee's August 31, 2015 meeting when the August 2015 Report was discussed (¶338) – is undoubtedly new evidence because it was never discussed in *Gubricky v. Ells*, 255 F. Supp. 3d 1119 (D. Colo. 2017).  That information, which was based on the Section 220 Documents, was ***only*** included in the *Lashkari* complaint and was not referenced in *Ells*.  *Compare* Ex. 1 *with Ells*, 255 F. Supp. 3d at 1124-26.

Second, Plaintiffs have always acknowledged that the facts and figures detailed in the August 2015 Report were discussed in *Ells*, and pointed to them in opposing Defendants' motion to dismiss the SAC.  *See* ECF No. 91 at 18 n.10.  Because this information was not addressed in the Order, however, it is appropriately considered on this motion.

The August 2015 Report establishes that the quality assurance statements were not puffery by demonstrating that Defendants could not have genuinely or reasonably believed these statements.  *Cf.* Order 54; *see also In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 80-81 (S.D.N.Y. 2017) (statements such as "[o]ur overriding commitment is to ensuring the safety of our people" were not puffery because "executives were aware of some of [the undisclosed safety issues] and their potential consequences, yet did not address the problems effectively"); *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 239-41 (S.D.N.Y. 2006) (statements such as "integrity and honesty are at the heart of our business" were not puffery where "there is enough to suggest that Defendants were aware of undisclosed facts that seriously undermined the accuracy of their professed opinions or beliefs").  The actionable statements from *BHP* and *Lapin* are very similar to Defendants' repeated claims that Chipotle "implement[s] operating standards for . . . safety in the restaurants."  Pl. Mem. 12-13.  And there is no doubt that these

statements are material because of the overriding importance of food safety at fast-food companies, which do nothing but sell fast food. *See, e.g.*, ¶263 ("As a restaurant company, nothing is more important to us than serving our guests food that is delicious and safe to eat").

### 3. The PTAC States a Claim for the Ingredient Traceability Omissions

The PTAC alleges new facts regarding ingredient traceability, a set of claims that was alleged for the first time in the SAC. *Cf. Loreley*, 797 F.3d at 191. These include that Wederquist was communicating with the CDC about ingredient traceability issues as early as December 2014. ¶¶118-23, 395. Defendants do not address those December 2014 communications with the CDC about traceability, all of which took place as part of the CDC's investigation into the Late 2014 E. Coli Outbreak (meaning they not have been included in the SAC). ¶395. Defendants also do not address Chipotle's post-Class Period admission that "[t]he ability to track our ingredients anywhere along their journey from the farm to our restaurants is central to our food safety program." ¶393; *see also In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) ("Any information that sheds light on whether class period statements were false or materially misleading is relevant," including "post-class period data"). These new allegations establish that Chipotle's ingredient traceability capability, or lack thereof, was material to investors throughout the Class Period, not just afterwards.

Defendants' statement in the 2014 Form 10-K that food safety is integrated "from the farms that supply our food all the way through to our front line" (¶379) is not addressed in the Order. *Cf.* Order 55-57. Nonetheless, Defendants criticize the PTAC for challenging this statement, incorrectly positing that the Court previously found it to be puffery. Def. Opp. 14. That never happened. Because this statement misrepresented Chipotle's farm-to-restaurant traceability capabilities during the Class Period, it is actionable. ¶¶380-81; Pl. Mem. 13-15.

    **4.**        **The PTAC States a Claim for the November 2015 Misrepresentations and Omissions**

Plaintiffs point to several facts and controlling law that were overlooked when the Court dismissed the 11/10/15 Press Release claims. Pl. Mem. 15-16. Although Defendants acknowledge these are appropriate grounds for Rule 59(e) relief, they nonetheless portray Plaintiffs' arguments concerning these statements as impermissibly raised on this motion. Def. Opp. 15. For the reasons set forth in their opening brief, Plaintiffs respectfully submit that the SAC's allegations concerning the 11/10/15 Press Release state a claim.

With respect to Defendants' argument concerning the *Eater* article (Def. Opp. 15-16) and the numerous other articles that similarly reported that the First Multistate Winter E. Coli Outbreak had definitively concluded following the 11/10/15 Press Release (¶¶474-77), these articles establish that the 11/10/15 Press Release misled investors into believing that the Washington and Oregon restaurants represented the ***entire*** outbreak. ¶477. But Defendants knew by November 2 this was misleading because this outbreak had implications beyond those two states. ¶¶464-69, 486. When investors learned on November 20 that additional sicknesses were found in other states (confirming ongoing risk), and that this "E. Coli Scare" was not only not "Over" (¶474) but was just beginning (¶239), Chipotle's stock declined over 12%. ¶501.

With respect to Defendants' argument concerning the 11/3/15 Press Release statement, Defendants claim that the PTAC is silent regarding whether the CDC was looking to conclude its investigation on November 3. Def. Opp. 16-17. Not only does the November 2 call establish that the CDC's investigation was expanding (¶465), the CDC was affirmatively reaching out to state health departments across the U.S. starting on November 2 as part of its ongoing investigation. ¶466. Chipotle also knew the investigation was in its infancy given its experience with the pre-October 2015 outbreaks. ¶¶467, 496-97. Thus, Defendants knew the 11/3/15 Press

Release statement was highly misleading.  ¶¶457-58.  It would constitute manifest injustice to allow Defendants to escape liability for this statement because it was not included in the SAC.

### 5.    The PTAC States a Claim for the Items 303 and 503 Omissions

In opposing the PTAC's Item 303 claims, Defendants attempt to contrast the situation here with that in *Ind. Pub. Ret. Syst. v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016), where the contract potentially represented 20% of SAIC's revenues, implying that Chipotle's quality assurance and ingredient traceability practices could not have had a material impact on revenue.  Def. Opp. 17-18.  But the contract at issue in *SAIC* only represented approximately 6% of revenues (818 F.3d at 96), and Defendants ignore that Chipotle only sells fast food (¶2), meaning its food-safety practices and traceability programs implicated ***all*** of the Company's revenues.  The materiality of these aspects of the PTAC's Item 303 claims to Chipotle's revenues is self-evident.

Equally unavailing is Defendants' claim that defendant Hartung's December 8, 2015 statement – that remedying Chipotle's deficient food-safety practices could result in menu price increases – "does not say anything about a material revenue impact."  Def. Opp. 18.  Raising menu prices for Chipotle's sole revenue source certainly implicates a material revenue impact. *See SAIC*, 818 F.3d at 96 (holding that facts relating to "a single contract out of SAIC's more than 10,000 ongoing contracts" were material and required to be disclosed under Item 303).

Finally, regarding the PTAC's Item 303 claim for the 3Q15 Form 10-Q, pertaining to the failure to disclose the pre-October 2015 outbreaks and their negative impact (¶¶452-54), Defendants fail to acknowledge that Chipotle's lack of outbreaks from 2009 until late 2014 means the risk-disclosure language cited by the Court was not "robust."  *Cf.* Order 62.  This language abjectly failed to adequately inform investors about the late 2014 to late 2015 epidemic of food-borne illness outbreaks that the CDC linked to Chipotle restaurants.  Pl. Mem. 18.

6.      **The PTAC Adequately Alleges that the Individual Defendants'
Stock Sales Support Scienter**

Even if the Late 2014 E. Coli Outbreak, or any of the other pre-October 2015 outbreaks

(Def. Opp. 19), were not related to the commissary switch (although they undoubtedly were), the

PTAC alleges that the Individual Defendants knew about numerous ***undisclosed*** outbreaks when

making their highly unusual and suspicious Class Period sales of Chipotle stock.   ¶¶511-13.

That they were selling unusually large amounts of Chipotle stock while knowing about the

unprecedented epidemic of food-borne illness outbreaks at Chipotle is, standing alone, enough to

support an inference that these sales were suspiciously timed.  Pl. Mem. 18-19.  Coupled with the

Court's previous ruling that Plaintiffs' motive allegations were otherwise sufficient (ECF No. 79

at 37), the PTAC adequately alleges that these sales support scienter.

While Defendants argue that the first Chipotle outbreak to be publicly revealed occurred

in August 2015 (Def. Opp. 20), this only serves to further support the suspicious timing of the

sales because they suddenly ceased precisely when this publicity began.  ¶¶514-15; Pl. Mem. 19.

7.      **The PTAC Adequately Alleges Loss Causation**

The Second Circuit is clear: "Plaintiffs need not demonstrate on a motion to dismiss that

the corrective disclosure was the ***only*** possible cause for decline in the stock price" – because

factual issues cannot be resolved at this stage of the litigation.  *Carpenters Pension Trust Fund of*

*St. Louis v. Barclays PLC*, 750 F.3d 227, 233 (2d Cir. 2014) (emphasis in original).  The PTAC's

loss causation allegations meet the *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) standard

(Pl. Mem. 19-21), and Defendants advance no new loss causation arguments.  Def. Opp. 20-21.

## III.   CONCLUSION

Plaintiffs respectfully request that the Judgment be vacated to allow the PTAC to be filed.

- 10 -

DATED:  June 1, 2018

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARK T. MILLKEY
MICHAEL G. CAPECI


*/s/ David A. Rosenfeld*
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
mmillkey@rgrdlaw.com
mcapeci@rgrdlaw.com

MOTLEY RICE LLC
JAMES M. HUGHES (*pro hac vice*)
CHRISTOPHER F. MORIARTY (*pro hac vice*)
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)
jhughes@motleyrice.com
cmoriarty@motleyrice.com

MOTLEY RICE LLC
WILLIAM H. NARWOLD
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT  06103
Telephone: 860/882-1681
860/882-1682 (fax)
bnarwold@motleyrice.com

*Lead Counsel for Lead Plaintiffs*

**CERTIFICATE OF SERVICE**

I, David A. Rosenfeld, hereby certify that on June 1, 2018, I authorized a true and correct copy of the Plaintiffs' Reply Memorandum Of Law In Further Support of Motion For Relief From Judgment and For Leave to Amend to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

/s/ David A. Rosenfeld
DAVID A. ROSENFELD