UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 20, 2018

       :

SUSIE ONG, *individually and*     :
*on behalf of all others similarly situated,*   :
*et al.,*        :

       :

       Plaintiffs,   :     16 Civ. 141 (KPF)

       :

       v.     :     OPINION AND ORDER

       :

CHIPOTLE MEXICAN GRILL, INC.,   :
M. STEVEN ELLS, MONTGOMERY F.   :
MORAN, and JOHN R. HARTUNG,   :

       :

       Defendants. :

       :

-------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

On March 22, 2018, the Court dismissed the Second Amended

Complaint (or "SAC") filed by Lead Plaintiffs Metzler Asset Management GmbH

and Construction Laborers Pension Trust of Greater St. Louis (collectively,

"Plaintiffs"). The SAC alleged claims for securities fraud against Defendants

Chipotle Mexican Grill, Inc. ("Chipotle"), as well as current and former Chipotle

executives Steven Ells, Montgomery F. Moran, and John R. Hartung

(collectively, the "Chipotle Executives" or the "Individual Defendants," and

including Chipotle, "Defendants"). The Court found numerous pleading

deficiencies despite two rounds of amendments to the operative complaint, and

the resulting dismissal order was with prejudice. Plaintiffs now move under

Federal Rule of Civil Procedure 59(e) to amend the judgment to provide that the

dismissal of the Second Amended Complaint was without prejudice and to

allow Plaintiffs to file a Proposed Third Amended Complaint (or "PTAC"). For the reasons that follow, the Court denies the motion.

BACKGROUND[1]

## A. The Second Amended Complaint

### 1. Plaintiffs' Allegations

The Court has previously expounded on the relevant facts, allegations, and procedural posture of this case in the course of resolving two motions to dismiss that can fairly be characterized as "scorched-earth." It therefore mentions here only what is necessary to resolve the instant motion. *See Susie Ong* v. *Chipotle Mexican Grill, Inc.*, No. 16 Civ. 141 (KPF), 2017 WL 933108, at *1-6 (S.D.N.Y. Mar. 8, 2017) ("*Ong I*"); *Ong* v. *Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 208-22 (S.D.N.Y. 2018) ("*Ong II*"). Broadly speaking, Plaintiffs allege, and Defendants do not dispute, that after a rash of food-borne illness outbreaks in late 2014 and 2015, some of which were linked to Chipotle, the value of the Company's stock steeply declined. *See Ong II*, 294 F. Supp. 3d at 207. But while others attribute these losses to the adverse publicity surrounding the outbreaks, Plaintiffs instead claim that they are due, in part or in whole, to Chipotle's failure to disclose certain granular details and attendant risks of its produce-processing and food-safety procedures. *See id.*

---

[1]   The Court draws from the parties' submissions in connection with this motion, including Plaintiffs' memorandum in support of their motion to alter or amend the judgment and for leave to amend the Second Amended Complaint ("Pl. Br." (Dkt. #107)); Defendants' opposition to Plaintiffs' motion ("Def. Opp." (Dkt. #112)); and Plaintiffs' reply memorandum of law in further support of the motion ("Pl. Reply" (Dkt. #115)). The Court also refers to the Original Complaint ("OC" (Dkt. #1)); the First Amended Complaint ("FAC" (Dkt. #49)); and the Second Amended Complaint ("SAC" (Dkt. #80)) filed in this action.

In March 2017, the Court dismissed Plaintiffs' First Amended Complaint (or "FAC"), finding, among other failings, that it was "long on text, but ... short on adequately-pleaded claims." *Ong I*, 2017 WL 933108, at *1.  Over the course of approximately 30 pages, the Court then outlined the many pleading deficiencies in the FAC.  *See, e.g.*, *id.* at *8 ("Plaintiffs' claim fails because they fail to plead adequately *both* the existence of a material misrepresentation or omission by Defendants and scienter." (emphasis added)).  At the end of *Ong I*, the Court granted Plaintiffs leave under Federal Rule of Civil Procedure 15 to file a second amended complaint, but admonished them as follows:

> The Court has not granted Plaintiffs leave to amend to correct pleading deficiencies on any prior occasion, and cannot find that amendment would be futile or unduly prejudicial.  It cautions Plaintiffs, however, that additional clarity need not require additional length. The Court also expects that Plaintiffs will consider carefully the Court's observations in this Opinion.

*Id.* at *19.

In response, Plaintiffs filed the SAC on April 7, 2017.  Plaintiffs emphasized to the Court that "[t]he SAC substantially expands the allegations of the [FAC], cures all the defects this Court identified in permitting leave to amend, and adequately alleges a new theory of liability (the ingredient traceability omissions) that was not in the [FAC]." (Dkt. #91 at 1).  In brief, the SAC alleged that Defendants made at least six types of material misstatements and omissions in financial statements filed by Chipotle with the SEC and in press releases issued by the company; the statements concerned (i) Chipotle's switch in 2014 to in-store processing of produce instead of commissary

preparation, and the attendant risks of that switch; (ii) quality assurance; (iii) Chipotle's ability to trace ingredients through its supply chain; (iv) certain alleged misstatements regarding guidance and financial results; (v) the omission of information allegedly required to be disclosed pursuant to Items 303 and 503 of SEC Regulation S-K; and (vi) statements in Chipotle's November 11, 2015 press release. *See Ong II*, 291 F. Supp. 3d at 218-40. Based on these allegations, the SAC alleged securities fraud claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. *See id.* at 208.

## 2. The Second Motion to Dismiss and the Supplemental Briefing

Defendants moved to dismiss the SAC and an expert witness declaration that was attached to it; the parties briefed those motions from June through September of 2017. (Dkt. #83-87, 90-92, 94-95). In their opposition briefing, Plaintiffs emphasized the number of new allegations that had been added to the SAC in response to the Court's first dismissal opinion. (*See, e.g.*, Dkt. #91 at 2 ("The new information in the SAC addresses the Court's principal concern in dismissing the AC by pleading Defendants' knowledge, or reckless disregard, of food-borne illnesses at Chipotle restaurants as soon as the commissary switch was made in late 2014.")). However, in an effort to cover all bases, Plaintiffs also sought leave to amend yet again if the Court found the SAC deficient:

> In addition, amendment is not futile for any claim in the
> SAC because: (i) numerous FOIA requests are currently

being pursued (SAC at 1 n.1); (ii) Plaintiffs' counsel have moved to intervene in the *Gubricky* Action for the limited purpose of unsealing the redacted *Gubricky* and *Lashkari* pleadings to the extent not already disclosed by the *Gubricky* Court (Pl. Ex. D); (iii) the federal criminal investigation is ongoing (SAC at 7 n.3); and (iv) Plaintiffs' counsel's independent investigation is ongoing. Any of these efforts may result in obtaining helpful information.

(*Id.* at 30 n.19).

### 3.    The Disclosures in the Colorado Lawsuits

The *Gubricky* and *Lashkari* suits to which Plaintiffs referred were shareholder derivative actions that had been filed in the United States District Court for the District of Colorado. *See generally Gubricky* v. *Ells*, No. 16 Civ. 2011 (WJM) (KLM) (D. Colo.); *Lashkari* v. *Ells*, No. 16 Civ. 3180 (WJM) (KLM) (D. Colo.). Six weeks prior to the filing of Plaintiffs' opposition brief, the district judge presiding over these suits had issued an opinion dismissing the *Gubricky* complaint on the basis of failure to plead demand futility. *See Gubricky on behalf of Chipotle Mexican Grill, Inc.* v. *Ells*, 255 F. Supp. 3d 1119 (D. Colo. 2017) ("*Gubricky I*"). Gubricky's claims were analogous to those made in this case: "Gubricky alleges oversight failures, such as failure to implement and enforce a system of effective food safety procedures, failure to monitor restaurants' compliance with food safety laws, failure to act on the August 2015 Internal Audit report, and failure to commit necessary resources to store audits and risk assessment." *Id.* at 1128.

At the start of its opinion, the district court made clear that resolution of the motion to dismiss required it to disclose information that had been filed under seal:

> Nearly every filing of significance to resolving Defendants' Motion to Dismiss has been made under Restricted Access, Level 1. Indeed, large portions of the complaint itself are redacted. (*See* ECF No. 1.) Having considered the matter carefully, the Court finds that it cannot properly explain its decision without summarizing and sometimes quoting Restricted Access allegations and other materials. Moreover, to the extent such materials are summarized or quoted below, the Court finds that the presumption of public access — and, in particular, the public's right to understand a court's reasons for deciding the way that it has — outweighs any private confidentiality interest asserted by the parties in this lawsuit. *See* D.C.COLO.LCivR 7.2(c). The Court also notes that a significant portion of the redacted or restricted materials relate to the "Norwalk Protocol," discussed further below, which is also summarized in unredacted portions of the complaint. (*See* ECF No. 1 ¶ 47.) Thus, there appears to be no basis for continuing to restrict matters related to the Norwalk Protocol.

*Gubricky I*, 255 F. Supp. 3d at 1122 n.1. The district court then proceeded to detail factual information that had not been publicly available, including information regarding internal Chipotle meetings and communications. The information disclosed included the following:

- "[A]ccording to a Board Pre-Read Executive Summary from Chipotle's Safety, Security and Risk Department provided to the Board on August 24, 2015 in advance of the Board meeting scheduled for September 1, 2015, the Safety, Security and Risk Department stated that 'there were no material food safety events this quarter.'" *Gubricky I*, 255 F. Supp. 3d at 1124 (quoting Gubricky Complaint ¶ 89).

- Chipotle's Audit Committee learned, no later than its meeting on August 31, 2015, that "Chipotle had budgeted 303 hours for store audits but had spent only 95, and expected to spend only 150 more hours (for a total of 245) through the remainder of 2015. It further informed the Audit Committee that Chipotle had budgeted about $38,000 for store audits that year, but so far had spent only about $13,000, and expected to spend approximately $17,500 during the remainder of the year (for a total of about $30,500)." *Id.* (citing Gubricky Complaint ¶ 90 (internal citations omitted)). Along with this information, the Audit Committee was advised by Chipotle's Internal Audit Department of "[m]ultiple instances of non-compliance … including improper cooking procedures" and "inaccurately marked food items." *Id.* at 1125 (quoting Gubricky Complaint ¶ 92).

- A "pre-read executive summary by [Chipotle's] Safety, Security and Risk Department provided to the Board on December 8, 2015 in advance of the Board meeting on December 16, 2015" disclosed plans for the department's field audit team to conduct "stepped-up audits" of "70-90% of our restaurants each quarter." *Id.* at 1126 (quoting Gubricky Complaint ¶ 93).

The *Gubricky* and *Lashkari* actions were known to Plaintiffs at least as of the time of the filing of the SAC, and the redacted complaints in each action were specifically discussed in the SAC. (*See, e.g.*, SAC ¶¶ 212-16).

### 4. Plaintiffs' Post-Briefing Fact Submission

Briefing on Defendants' second motion to dismiss concluded in September 2017. By letter dated November 1, 2017, however, Plaintiffs sought "to apprise the Court of facts and information obtained by Plaintiffs' counsel as part of our ongoing investigation into the events detailed in the Second Amended Complaint for Violations of the Federal Securities Laws." (Dkt. #96 at 1). The information in question had been recently received in response to a

7

FOIA request to which Plaintiffs had made mention in their opposition memorandum. (*Id.* ("One of the FOIA requests was to the CDC, which recently produced documents to Plaintiffs' counsel on October 25, 2017."); *see also* Dkt. #91 at 19, 30 n.19). Plaintiffs argued that the documents received provided evidence of a "fourteenth outbreak beyond the thirteen detailed in the SAC" (Dkt. #96 at 1 (emphases deleted)), an E. coli outbreak that occurred between October and December 2014, and that was termed by Plaintiffs "the Late 2014 E. Coli Outbreak." Among other things, Plaintiffs argued that the documents obtained pursuant to the FOIA requests "strongly support corporate scienter for the commissary switch omissions because they show that Chipotle experienced — and knew about — food-borne illness outbreaks contemporaneously with making the commissary switch in late 2014." (*Id.* at 2).

Unsurprisingly, Defendants objected to the submission. By letter dated November 3, 2017, Defendants argued that Plaintiffs' November 1 letter was an unauthorized sur-reply, one that "inappropriately relies on allegations not contained in the Second Amended Complaint, as well as documents that Lead Plaintiffs have never shown to Defendants and that are not referenced in the Second Amended Complaint or even attached to the surreply." (Dkt. #97 at 1). The Court agreed, and advised the parties that "[i]n the absence of a motion to amend or a motion to convert the pending motion to dismiss into a motion for summary judgment, the Court does not believe that it can consider Plaintiffs' newly-proffered factual information." (Dkt. #98 at 2). Plaintiffs disclaimed a

present intention to move to amend, analogizing their submission instead to a

pleading placeholder:

> We write to clarify for the Court that Plaintiffs do not intend to file a motion to amend the Second Amended Complaint for Violations of the Federal Securities Laws ("SAC"; Dkt. No. 80) at this time. *See* Dkt. No. 98. We believe that amendment is premature given the additional evidence Plaintiffs expect to obtain over the next several months (*see* Dkt. No. 96 at 4 n.6), but anticipate moving to amend, if necessary and/or appropriate, once this evidence is received. While we believe that the SAC adequately states a claim and that the pending motion to dismiss will be denied, in the event that the Court dismiss the SAC, Plaintiffs respectfully request that the information contained in our November 1 letter be considered as part of the Court's leave to amend analysis and that any dismissal be without prejudice.

(Dkt. #99).

### 5.    The Court's Dismissal of the SAC

On March 22, 2018, the Court dismissed the SAC for failure to state a

claim under Sections 10(b) and 20(a) and Rule 10b-5. *See Ong II,* 294 F. Supp.

3d at 241. In a 74-page decision, the Court explained that Plaintiffs had

inadequately pleaded either a material misstatement or omission, or facts

giving rise to a strong inference of scienter. *See id.* at 239.

The Court also denied Plaintiffs' request for leave to amend the SAC and

file a Third Amended Complaint, finding that such amendment would be futile.

*See Ong II*, 294 F. Supp. 3d at 240-41. As of the time of its decision, the Court

had not been presented with a proposed Third Amended Complaint, but had a

sense of Plaintiffs' arguments from their opposition memorandum and their

November 1 letter. The Court considered the arguments that Plaintiffs

advanced in the November 1 letter, but did not construct arguments on Plaintiffs' behalf for the outstanding discovery requests mentioned in that letter. Even after considering the arguments outlined in Plaintiffs' November 1 letter, the Court was left to conclude that "these attempts to discover further information *without any indication that such efforts would cure the deficiencies in Plaintiffs' pleadings* do not assure the Court that amendment would not be futile." *Id.* (emphasis added). What is more, the Court observed as to the outstanding discovery requests that "none of these efforts has a clear end date, and extending the pleading stage in this litigation indefinitely would cause Defendants undue prejudice given their interest in finality and repose." *Id.*

### 6. Plaintiffs' Intervention Efforts in the Colorado Derivative Actions

After the Colorado district court dismissed the complaint in the *Gubricky* derivative suit, counsel for Plaintiffs moved in that case to intervene and to unrestrict documents, including the complaints filed by Gubricky and Lashkari. (*See* Colorado Dkt. #93-94). On March 26, 2018, the district court granted the motion to intervene and granted in part the motion to unrestrict. *Gubricky on behalf of Chipotle Mexican Grill, Inc.* v. *Ells*, No. 16 Civ. 2011 (WJM) (KLM), 2018 WL 1558264 (D. Colo. Mar. 26, 2018) ("*Gubricky II*"). The district court made plain, however, that the latter decision was a natural outgrowth of the court's previously-disclosed inability to "properly explain its decision without summarizing and sometimes quoting Restricted Access allegations and other materials." *Gubricky II*, 2018 WL 1558264, at *4 (quoting *Gubricky I*, 255

F. Supp. 3d at 1122 n.1). "Given this, and in light of the matters the Court actually quoted or summarized, the Court finds that the substance of numerous paragraphs from Gubricky's complaint has already been publically revealed and that continued restriction of those paragraphs would serve no principled purpose." *Id.* at *5 (internal citations omitted). The district court found similarly that while it "ha[d] never quoted from or summarized Lashkari's complaint, ... much of the redacted material substantially duplicates what the Court will order unrestricted from Gubricky's complaint." *Id.*

### 7. The Instant Motion

On April 20, 2018, Plaintiffs filed a motion to alter the judgment to allow Plaintiff to amend the SAC. (Dkt. #106). On May 18, 2018, Defendants filed an opposition to the motion (Dkt. #112), and on June 1, 2018, Plaintiffs replied to the opposition (Dkt. #115). Accordingly, the motion is fully briefed and ripe for decision.

## DISCUSSION

### A. Applicable Law

"A party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to [Federal Rule of Civil Procedure] 59(e) or 60(b)." *Ruotolo* v. *City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citing *Nat'l Petrochemical Co. of Iran* v. *M/T Stolt Sheaf*, 930 F.2d 240, 244-45 (2d Cir. 1991)). Here, Plaintiff moves under Rule 59(e), which reads in full, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Although "Rules 59(a)-(d) by

11

their terms apply only to cases that have been tried, Rule 59(e) is not limited by its language to judgments entered after trial," and where, as here, a case is "dismissed on motion … and judgment entered accordingly[,] courts routinely consider Rule 59(e) motions to alter or amend such a judgment." *United States* v. *Lloyds TSB Bank PLC*, 639 F. Supp. 2d 326, 328 (S.D.N.Y. 2009).

A party seeking relief under Rule 59(e) must show that the court "overlook[ed] controlling decisions or factual matters that were put before it on the underlying motion … and which, had they been considered, might have reasonably altered the result before the court." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 261, 262 (S.D.N.Y. 2005) (quoting *Range Road Music, Inc.* v. *Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (interpreting Local Civil Rule 6.3); *see also In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, No. 08 MDL 1963 (RWS), 2011 WL 4357166, at *1 (S.D.N.Y. Sept. 13, 2011) ("The standards governing motions under both Rule 59(e) and Local Civil Rule 6.3 are the same[.]"). Alternatively, a court may grant a Rule 59(e) motion based on an intervening change in law, newly discovered evidence, or "to correct a clear error or prevent manifest injustice." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d at 262; *Universal Trading & Inv. Co.* v. *Tymoshenko*, No. 11 Civ. 7877 (PAC), 2013 WL 1500430, at *1 (S.D.N.Y. Apr. 10, 2013) (observing that a Rule 59(e) motion "will generally be denied unless the movant can point to an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" (internal citation and quotation marks omitted)).

Such relief, however, "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Tymoshenko*, 2013 WL 1500430, at *1 (quoting *Parrish* v. *Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)).

In considering such motions, the moving party should "avoid repetitive arguments on issues that have been considered fully," as such a motion "is not a substitute for appeal." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d at 262 (internal citations omitted). A court should deny such motion "where the moving party is solely attempting to relitigate an issue that already has been decided," and must remain vigilant "to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *In re CRM Holdings, Ltd. Sec. Litig.*, No. 10 Civ. 975 (RPP), 2013 WL 787970, at *3 (S.D.N.Y. Mar. 4, 2013) (internal citations omitted). Indeed, "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *Sequa Corp.* v. *GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998). "The 'narrow aim' of Rule 59(e) is 'to make clear that district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." *Greene* v. *Town of Blooming Grove*, 935 F.2d 507, 512 (2d Cir.1991) (citation omitted).

The Second Circuit has explained that because of the liberality with which courts grant leave to amend under Rule 15, the interest in finality generally applicable to post-judgment motions may give way to allow courts "to

take into account the nature of the proposed amendment in deciding whether to vacate [a] previously entered judgment." *Williams* v. *Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (quoting *Ruotolo*, 514 F.3d at 191). At the same time, "[w]here … a party does not seek leave to file an amended complaint until after judgment is entered, Rule 15's liberality must be tempered by considerations of finality." *Id.* "Although the decision of whether to allow plaintiffs to amend their complaint is left to the sound discretion of the district court, there must be good reason to deny the motion," such as futility. *Acito* v. *IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995).

## B.    Analysis

### 1.    Overview

Plaintiffs' motion proceeds on three fronts: Plaintiffs seek leave to file the PTAC based on newly discovered evidence; they claim that the Court overlooked certain of the SAC's allegations in resolving *Ong II*; and they reiterate arguments made previously, and unsuccessfully, in opposing the prior motion to dismiss. The third argument is obviously inappropriate under Rule 59(e), and the Court will dispense with it quickly. And while the second argument is a theoretically valid basis for reconsideration, Plaintiffs are factually incorrect that the Court overlooked any of their arguments. In the next section, the Court focuses on the first argument and, more specifically, on whether Plaintiffs have in fact proffered newly-discovered evidence.

### 2.  Plaintiffs Have Largely Failed to Proffer Newly Discovered Evidence

Plaintiffs' motion outlines what they claim are "new facts and information," not available when the SAC was filed, consisting of the unrestricted materials from the Colorado derivative actions and the results of several FOIA requests.  (Pl. Br. 4).  Defendants respond that all of this information was publically available prior to the entry of judgment on March 22, 2018, and therefore is not "newly discovered."  (Def. Opp. 5, 11).  As an initial matter, the Court agrees with Defendants that the relevant date is the date of the Court's opinion, and not the date of the SAC's filing.  *See Tymoshenko*, 2013 WL 1500430, at *1 (finding "without merit" arguments supporting Rule 59(e) motion where "[t]hey consist largely of requests to plead previously available evidence"); *cf. In re CRM Holdings, Ltd. Sec. Litig*, 2013 WL 787970, at *9 (rejecting motion for reconsideration under Local Civil Rule 6.3 where "decisions and complaints to which [movant] refer were all filed — and publicly available — prior to the publication of this Court's Opinion").

The parties' dispute about timing is fundamental.  The Court accepts Plaintiffs' explanation that it would have been inefficient to plead by accretion, i.e., to submit a proposed amended complaint each time new evidence was obtained.  However, the Court cannot accept Plaintiffs' conclusion that the potential for such inefficiencies permits a litigant to make mention of the mere prospect of receiving additional discovery, hoard part or all of that discovery until after a court resolves a dispositive motion, and then receive an automatic leave to amend for its strategic reticence.  Indeed, the procedural history of this

case confirms that Plaintiffs did not practice what they would have this Court preach:  When evidence came to light that, in Plaintiffs' estimation, bolstered their claims, Plaintiffs specifically wrote the Court to "request that the information contained in our November 1 letter be considered as part of the Court's leave to amend analysis and that any dismissal be without prejudice." (Dkt. #99).

Plaintiffs have further confounded the Court's analysis by failing to distinguish what they received before and after March 22, 2018.  The Court has done its best to make those distinctions from the various submissions to it in connection with the second motion to dismiss and with this motion, but to the extent it has been unable to identify whether a document was received by Plaintiffs after the date the Court dismissed the SAC, the failing is Plaintiffs'.

### a.    The Unsealed *Gubricky* and *Lashkari* Complaints

In their PTAC, Plaintiffs offer as newly discovered evidence information from the unrestricted complaints filed in the *Gubricky* and *Lashkari* actions. (Pl. Br. 4-6).  Defendants rely on the Colorado court's reasoning that much of the substance of the complaints was publically available prior to the entry of judgment to argue that the complaints themselves are not "newly discovered evidence" for the purposes of a Rule 59(e) motion.  (Def. Opp. 11).  In response, Plaintiffs argue that the "most salient aspect" of the new evidence — that several of the Defendants were present at Chipotle Audit Committee's August 31, 2015 meeting — had not been publically disclosed prior to the unsealing.  (Pl. Reply 6).

This Court has compared the two revised redacted complaints, the district court's decision from June 2017, and the relevant paragraphs of Plaintiffs' PTAC.  It finds that, with the exception of the allegation cited by Plaintiffs in their reply brief and mentioned in the previous paragraph, the information sourced by Plaintiffs to the *Gubricky* and *Lashkari* complaints was available to it in June 2017, from either the redacted versions of the two complaints or the district court's detailed dismissal opinion.  (*See, e.g.*, PTAC ¶¶ 281-89, 336, 343, 345).  And the single new fact identified by Plaintiffs does not move the needle in favor of reopening the Court's prior decision.  Nevertheless, as discussed below, even if the Court were to consider the entirety of the unsealed complaints, along with the PTAC, the Court would find no grounds to amend its previous judgment.  The evidence Plaintiffs present would not "have reasonably altered the result before the [C]ourt."  *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d at 262 (quoting *Range Road Music, Inc.*, 90 F. Supp. 2d at 392).

## b.    The FOIA Request Information

In addition to the unsealed complaints, Plaintiffs claim newly discovered evidence in the form of "FOIA-request information that was unavailable when the SAC was filed."  (Pl. Br. 7).  Defendants retort that such information is not new for purposes of this motion because "Plaintiffs do not, as they must, plead that the information was unavailable prior to entry of the judgment on March 22, 2018."  (Def. Opp. 5).  Instead, Plaintiffs merely contend that the information was unavailable at the time of the filing of the SAC.  (*Id.*; Pl. Br. 7).

Here, the Court sides with Defendants. In their November 1 letter, Plaintiffs advised the Court that it had received documents in response to FOIA requests served on the CDC on October 25, 2017. (Dkt. #96). The Court understands that Plaintiffs may have served multiple FOIA requests and may have received responses from different parties over time. However, it is incumbent on Plaintiffs to make clear when those materials were received. By stating that "within two weeks" of the March 22, 2018 entry of judgment, "Plaintiffs had received all of the documents they sought through their FOIA requests" (Pl. Br. 4), Plaintiffs are being too clever by half, eliding temporal distinctions that are critical to the Rule 59(e) analysis. In refusing to identify what was received prior to the Court's entry of judgment, Plaintiffs have failed to meet their burden of identifying newly-discovered evidence. Again, however, the failure is immaterial, as even the evidence they claim to be newly-discovered would not have changed the Court's decision.

### 3. Plaintiff Has Not Presented Newly Discovered Evidence That Would Have Altered the Court's Decision

Plaintiffs concede that they are using their Rule 59 motion as a vehicle to remedy the SAC's failures. (Pl. Br. 2 ("Plaintiffs' new allegations cure the deficiencies proposed by the Court with [Plaintiffs' claims in the SAC].")). However, as discussed herein, the deficiencies would not be cured. *Cf. In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d at 263 ("The purpose of Local Rule 6.3 is 'to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion

with additional matters.'" (quoting *Carolco Pictures, Inc.* v. *Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y 1988))).

Significant to resolution of the instant motion is the heightened pleading standard, which Plaintiffs often overlook. Claims under Section 10(b) and Rule 10b-5 "sound in fraud," and, thus, are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b) that requires the complaint to "[i] specify the statements that the plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made, and [iv] explain why the statements were fraudulent." *Barrett* v. *PJT Partners Inc.*, No. 16 Civ. 2841 (VEC), 2017 WL 3995606, at *4 (S.D.N.Y. Sept. 8, 2017) (quoting *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)). In addition, under the Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737 (codified as amended in various sections of 15 U.S.C.), a complaint for securities fraud must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the Complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The Court now turns to six categories of claims, and finds Plaintiffs' arguments and allegations as to each to be unpersuasive.

### a. Commissary-Switch Omissions

Plaintiffs' first claim is premised on Defendants' alleged duty to disclose any heightened risk associated with Chipotle's switch from commissary

produce processing to in-store processing.  (Pl. Br. 7-11).  The Court previously

dismissed this claim, finding that the 2014 Form 10-K's disclosed risk factors

were both accurate and candid, and the commissary switch itself did not

change these disclosed risk factors in a material way.  *See Ong II*, 294 F. Supp.

3d at 228.

Plaintiffs' argument for reconsideration hinges on a disagreement with

the Court's prior legal determination:  Contrary to the Court's Opinion,

Plaintiffs believe that they did in fact create a reasonable inference of the link

between the outbreaks in question and the switch in processing methodology.

(Pl. Br. 9 ("[T]he Court improperly failed to credit an important inference in

Plaintiffs' favor — that the spike in food-borne illness outbreaks was

attributable to the switch in produce-processing methodology.")).  This

conclusory statement, which does not suggest that Chipotle's risk factors

changed in any material way, is not a valid basis for reconsideration.  *See*

*Women's Integrated Network, Inc.* v. *U.S. Specialty Ins. Co.*, No. 08 Civ. 10518

(LAP), 2011 WL 1347001, at *1 (S.D.N.Y. Apr. 4, 2011) (holding that already

decided legal issues cannot be relitigated because of "a mere disagreement with

the Court's legal determination"), *aff'd sub nom. Women's Integrated Network,*

*Inc.* v. *U.S. Specialty Ins. Co.*, 495 F. App'x 129 (2d Cir. 2012) (summary order).

Plaintiffs cite "newly-discovered" evidence concerning additional food-

borne illness outbreaks investigated by the Centers for Disease Control ("CDC")

between 2008 and 2014.  (*See* Pl. Br. 7-11).  These allegations, even taken

together, fail to remedy the pleading deficiency identified by the Court:

> If the "new outbreaks" add little to Plaintiffs' claim that Defendants were under a duty to disclose greater risks associated with Chipotle's food safety, they add even less to Plaintiffs' claim that Defendants knew or should have known that such increased risk even existed. After all, none of the new outbreaks was linked to a specific ingredient or supplier. Plaintiffs do not propose how these risks would be quantifiable going forward, or some other basis for further tailoring of Chipotle's then-existing risk disclosure.

*Ong II*, 294 F. Supp. 3d at 230.

Separately, Plaintiffs claim that the PTAC now adequately alleges that Defendants failed to disclose any heightened risk associated with the switch away from commissary produce processing *with scienter*. (Pl. Br. 8-9, 18-19). For the most part, Plaintiffs' argument rests on the proposition that the Court disregarded previously briefed information regarding the individual defendants' stock sales. (*Id.* at 18-19). However, the Court addressed the stock sales in detail, and found that, despite the evidence offered, Plaintiffs had not sufficiently pleaded scienter. *See Ong II*, 294 F. Supp. 3d at 230-31. This motion is not an opportunity for Plaintiffs to re-litigate an already decided issue.

### b.   Quality-Assurance Omissions

In the PTAC, Plaintiffs reiterate arguments previously made to the Court regarding Chipotle's statements about food-safety programs and protocols. (Pl. Br. 11-13). Plaintiffs argue — based on the unsealed *Gubricky* and *Lashkari* complaints — that Chipotle's food safety practices were insufficient:

> [T]he SSR audit team continued to be understaffed, the frequency of the Class Period SSR audits continued to be inadequate to evaluate Chipotle's food safety

> practices across its operations, and the audits
> continued to be inherently deficient by virtue of focusing
> on cultural issues at the expense of food safety.

(Pl. Br. 12). From these allegations, Plaintiffs reason that Chipotle's statements that the company's "quality assurance department establishes and monitors [the Company's] quality and food safety programs," and that the Company's "training and risk management departments develop and implement operating standards for food quality, preparation, cleanliness and safety" were demonstrably false. *See Ong II*, 294 F. Supp. 3d at 232.

The Court disagrees and, in fact, rejected this precise argument in the March 22, 2018 Order. *See Ong II*, 294 F. Supp. 3d at 232. Any allegations that Chipotle failed adequately to implement the food safety measures, or that the company's auditing system was deficient, "do not conflict with Defendants' statements regarding the food-safety programs and procedures that Chipotle had in place, but merely quibble with Chipotle's execution of those programs and procedures." *Id*. By attempting to shore up an argument that the Court previously rejected with additional evidence of the deficiencies in the food-safety process, Plaintiffs do not establish grounds for reconsideration.

### c. Traceability Omissions

Next, Plaintiffs revisit the issue of traceability, arguing that Defendants failed to disclose material facts regarding Chipotle's ability to trace ingredients back to their suppliers. (Pl. Br. 13-14). In the March 22, 2018 Order, the Court held that "the alleged misstatement — the 2014 Form 10-K's discussion of Chipotle's use of multiple produce suppliers — is far too attenuated from the

alleged omission — the nondisclosure of Chipotle's ability to trace ingredients — to trigger a corresponding duty to disclose," and dismissed Plaintiffs' claim.  *See Ong II*, 294 F. Supp. 3d at 233.  Defendants did not rely "on their suppliers to guarantee contaminant-free produce; any such reliance might have triggered a duty to disclose that Chipotle had no way of verifying which producers supplied produce with contaminants."  *Id.*

Here again, Plaintiffs engage in a variety of tactics, which include reiterating arguments previously made to the Court in the SAC and voicing displeasure with the Court's legal determinations.  (Pl. Br. 13-14).  As previously discussed, a motion for reconsideration is not a substitute for appeal, *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d at 262, nor is it an opportunity to take a "second bite at the apple," *Sequa Corp.*, 156 F.3d at 144.  The Court finds no basis to reopen this portion of its decision.

### d.     November 2015 Misrepresentations and Omissions

Similarly, Plaintiffs reiterate their allegations that a November 10, 2015 Chipotle press release contained a material misstatement.  (Pl. Br. 15-16).  Here, as well, Plaintiffs offer no "newly discovered evidence" in support of their argument, and instead rely on "new articles issued in the wake of the 11/10/15 Press Release."  Those articles, Plaintiffs claim, "made it clear that the public *understood* the 11/10/15 Press Release to refer to the entirety of the outbreak," indicating that the Court erred in concluding that the press release could not be misleading as to the ongoing risk outside of Washington and Oregon.  (*Id.* at 15 (emphasis in original)).  Not only is Plaintiffs' argument not

proper on a motion for reconsideration, but it would not alter the Court's decision. Just as the Court found that Plaintiffs' previous "iteration of this claim [was] predicated on isolated phrases [from the Press Release] shorn of their context," *Ong II*, 294 F. Supp. 3d at 238, this latest iteration also "focus[es] exclusively on snippets of an article to mischaracterize its actual content" (Def. Opp. 15).

Further, Plaintiffs advance a new argument, by pleading a new false statement that was not included in the SAC. (Pl. Br. 16). Plaintiffs do not, however, indicate that the argument was predicated on newly-discovered evidence. A motion for reconsideration is not "an opportunity for making new arguments," *Associated Press* v. *U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005), nor must the Court credit this argument to escape "manifest injustice," as Plaintiffs suggest. (Pl. Reply 9).

### e. Items 303 and 503 Omissions

Plaintiffs' claims under Items 303 and 503 allege material omissions from Chipotle's 2014 Form 10-K, April 2015 Form 10-K, July 2015 Form 10-Q, and 2014 Form 10-K. (Pl. Br. 17-18). In the March 22, 2018 Order, the Court recognized that "these alleged omissions sound in the same theories underlying Plaintiffs' commissary-switch, quality-assurance, and traceability claims. *See Ong II*, 294 F. Supp. 3d at 235. For that reason, the Court held that "[t]hese claims fail for substantially the same reasons as the claims above." *Id.* The situation is no different here. For the same reasons that the Court does not find that Plaintiffs have sufficiently pleaded the commissary-switch, quality-

assurance, and traceability claims on a motion for reconsideration, the Court finds that Plaintiffs' claims based on Items 303 and 503 are not valid bases for reconsideration.

### f.     Loss Causation

Finally, Plaintiffs address the Court's discussion of loss causation. (Pl. Br. 19-21). The Court did not reach the issue of causation in the March 22, 2018 Order, "because all of Plaintiffs' claims inadequately plead either a material misstatement or omission, or facts giving rise to a strong inference of scienter." *See Ong II*, 294 F. Supp. 3d at 239. Nonetheless, the Court noted its "skepticism" that Plaintiffs had adequately pleaded loss causation. *Id.* at 239 n.9.

In perhaps the most egregious example of Plaintiffs attempting to use their motion for reconsideration to rehash old arguments, Plaintiffs "rely exclusively on arguments from their brief opposing Defendants' motion to dismiss." (Def. Opp. 20). In fact, Plaintiffs admit as much: "For the reasons given in Plaintiffs' brief opposing Defendants' motion to dismiss the SAC, both the SAC and the PTAC adequately allege loss causation for each of the either disclosures alleged." (Pl. Br. 20). Once again, Plaintiffs improperly attempt to use their motion as a substitute for appeal, and their arguments cannot be considered as valid grounds for reconsideration.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion is DENIED. The Clerk of

Court is directed to terminate the motion pending at docket entry 106.

SO ORDERED.

Dated:     November 20, 2018
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge